**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

Deborah Ann K.                                          )
                                                       )
                    Plaintiff,                         )
                                                       )       Case No.: 25-cv-50220
            v.                                         )
                                                       )       Magistrate Judge Margaret J. Schneider
Frank J. Bisignano,                                    )
Commissioner of Social Security,                       )
                                                       )
                    Defendant.                         )

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Deborah Ann K., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court remands this matter for further proceedings consistent with this opinion.

**BACKGROUND**

A.      Procedural History

On June 3, 2014, Deborah Ann K. ("Plaintiff") protectively filed an application for social security disability benefits. This application alleged a disability beginning on May 24, 2014. [14], p. 2. The Social Security Administration ("Commissioner") denied this application initially and on reconsideration. *Id*. Plaintiff then appeared before an Administrative Law Judge ("ALJ") on June 9, 2017. At that hearing, Plaintiff amended her alleged onset date to July 24, 2014. *Id*. The ALJ issued an unfavorable decision (R. 15-27), and the Appeals Council declined review. *Id*. A civil action was filed in this court and a report and recommendation was issued to the district court judge to remand the case for further consideration.[1] While that action was pending, on September 12, 2018, Plaintiff filed a subsequent application for disability benefits alleging disability beginning on August 31, 2017. On October 9, 2020, an ALJ issued a fully favorable decision finding that Plaintiff had been under a disability since August 31, 2017. R. 717-24. As to the pending case, on August 27, 2022, the Appeals Council issued a remand. [14], p. 3. Plaintiff appeared before ALJ Jessica Inouye on February 2, 2023. On March 1, 2023, ALJ Inouye issued an unfavorable decision, finding that Plaintiff had not been disabled at any time. R. 779-799. The Appeals Council remanded this decision on June 27, 2023, for further proceedings. Plaintiff appeared before ALJ Inouye on March 4, 2023, represented by counsel. *Id*.

On April 3, 2024, ALJ Inouye issued her written opinion denying Plaintiff's claims for disability insurance benefits for the period of July 24, 2014, to August 30, 2017. R. 598-615.

---

[1] *See* Case No. 18 CV 50302 [20].

Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 588-591. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [22]. Now before the Court are Plaintiff's motion for summary judgment [14] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [18]. Plaintiff has also filed a reply brief [19].

B. The ALJ's Decision

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of July 24, 2014, through August 30, 2017. R. 601. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the right shoulder, osteoarthritis of the left hip, and obesity. R. 601-04. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 604-05.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: Plaintiff could never climb ladders, ropes, or scaffolds; she could occasionally climb ramps/stairs, stoop, crouch, kneel, and crawl. She could occasionally reach overhead with the dominant right upper extremity; and could frequently push and pull and perform forward and lateral reaching with the dominate right upper extremity. Plaintiff should avoid work that involves extreme cold temperatures, dangerous moving machinery, unprotected heights, and vibrating tools and work surfaces. R. 605-14. At step four, the ALJ found that Plaintiff could perform her past relevant work as a medical assistant. R. 614. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from the alleged onset date of July 24, 2014, through August 30, 2017, the day prior to the date disability was established based on a subsequent claim. R. 614.

**STANDARD OF REVIEW**

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge

2

between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); see also *Warnell*, 97 F.4th at 1054; *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("While we have never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits.").

## DISCUSSION

Plaintiff raises two arguments: 1) the ALJ failed to give the proper weight to Plaintiff's treating physician's opinions; and 2) the ALJ failed to adequately evaluate Plaintiff's subjective symptom testimony. The Court finds that the ALJ failed to give the proper weight to the opinions of Plaintiff's treating physician. Therefore, this matter will be remanded for further proceedings. The Court need not address Plaintiff's other arguments for remand.

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. 404.1527(c)(2)). The treating physician rule has been described as a two-step process. *See Wallace v. Colvin*, 193 F. Supp. 3d 939, 946 (N.D. Ill. 2016). First, the ALJ must determine whether to give the treating physician's opinion "controlling weight," by evaluating if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the ALJ decides not to give controlling weight to a treating physician's opinion, then she must proceed to the second step and evaluate certain checklist factors to determine the amount of weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). These factors include: examining relationship; treatment relationship (length and nature of treatment relationship and frequency of examination, as well as nature and extent of the treatment relationship); supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c). While the Court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion within the multifactor framework delineated in the regulation." *Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021) (internal citation omitted). A treating physician has "greater familiarity with the claimant's condition and circumstances," such that an ALJ may only discount a treating physician's opinions based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

The record reflects that Plaintiff's treating physician was Dr. Atisak Sapying. The ALJ acknowledged that under the regulations, she was obligated to first determine whether to give Dr. Sapying's opinion controlling weight. Second, if she declined to give Dr. Sapying's opinion controlling weight, she would then have to determine what weight to afford the opinion using the statutory factors. In assessing Dr. Sapying's opinion under the first step of the treating physician rule, the ALJ found that Dr. Sapying's "extreme limitations" were wholly inconsistent with the doctor's own reported medical findings and other evidence of record. At the outset, the ALJ stated that while Dr. Sapying was Plaintiff's treating physician throughout the treatment period at issue, "the claimant did not see him from April 2016 through August 30, 2017, a period over one year."

R. 611.[2] The record belies this statement. Plaintiff was seen by Dr. Sapying on April 18, 2016, May 2, 2017, May 30, 2017, June 16, 2017, and August 14, 2017. R. 1169-83. The Court finds this a significant oversight, as discussed in more detail below.

In her decision, the ALJ begins with Dr. Sapying's July 24, 2014, clinical examination of Plaintiff (the alleged onset date) noting that Plaintiff showed only "mild tenderness." The ALJ stated this was in contrast with Dr. Sapying' assessment that Plaintiff could sit, stand, and walk for less than one hour in an eight-hour workday, and would need to alternate positions every half hour. R. 612. The ALJ next noted that Plaintiff saw Dr. Sapying in February 2015 where Plaintiff's examinations were reported as "completely normal." *Id*. The ALJ found that while Dr. Sapying reported in June 2015 that Plaintiff had an antalgic gait, tenderness, and limited lumbar range of motion, in March 2016, she had a normal exam, including a non-antalgic gait. *Id*. The ALJ then stated that "[t]hroughout the period at issue" there is no evidence that Plaintiff used or needed a cane or any kind of assistive device, no report of positive straight-leg raising tests, no documentation of any motor loss, no limitations in handling and fingering, and nothing in any of the examination findings that would support the need for unscheduled breaks multiple times throughout a workday. The ALJ concluded by stating: "Because Dr. Sapying's opinion is wholly inconsistent with his own reported medical findings and the other substantial evidence of record, it is not entitled to controlling weight." R. 612.

It is well settled that whether a doctor's opinion is consistent with the medical record is an important factor in determining whether a treating source's opinion is entitled to controlling weight. *See, e.g.*, *Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020). Here, Plaintiff argues that the medical evidence the ALJ relied on as inconsistent with Dr. Sapying's opinion included findings such as antalgic gait, lower back pain, reduced strength, decreased range of motion, and tenderness in hip and lower back. The ALJ's opinion fails to explain how this evidence permits a finding that Dr. Sapying's opinion was "wholly inconsistent" with the record. *Edgar W. v. O'Malley*, No. 15 C 7571, 2024 WL 965179, at *5 (N.D. Ill. March 6, 2024) ("…evidence demonstrates that the ALJ did not adequately articulate her reasons for completely discounting the opinion of the treating physician."). The ALJ also noted "normal" exams of Plaintiff in contrast to exams that showed abnormal findings; however, the ALJ's decision does not explain why these "normal" findings would exclude Dr. Sapying's opinion that Plaintiff had severe limitations.

Ultimately, the ALJ's decision sets forth only a list of evidence and then draws a conclusion. "The [ALJ's] finding must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). The Court finds that the ALJ did not adequately evaluate the treating physician's opinion to determine whether to give it controlling weight.

As to the second step of the treating physician's rule, the ALJ is obligated to analyze the treating physician's opinion using a set of factors in order to determine the amount of weight to give the opinion. These factors include, among other things, the treatment relationship between the claimant and the treating physician, which includes the length and nature of treatment relationship and frequency of examination, as well as nature and extent of the treatment

---

[2] The record reflects, however, that Plaintiff was incarcerated from sometime in May 2016 through sometime in March 2017.

relationship. *See* 20 C.F.R. § 404.1527(c). The Court recognizes that the ALJ is under no obligation to review and analyze every factor, however, the ALJ "is required to explicitly consider the details of the treatment relationship and explain the weight [s]he has giving the opinion." *Marcus W. v. Bisignano*, No. 23 CV 1936, 2025 WL 2299601, at * 2 (Aug. 8, 2025), citing *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). Here, in her second step analysis of the treating physician rule, the ALJ stated, "[Dr. Sapying] continued to treat the claimant into March 2016 but there is no evidence of him seeing the claimant after that through August 30, 2017. In fact, the record reflects significant gaps in treatment. Overall, he appears to have seen the claimant only a handful of times between July 24, 2014 and August 30, 2017." R. 612. As with the similar comment in her step one analysis, the ALJ again appears to rely significantly on a concern that Plaintiff only saw Dr. Sapying a "handful of times." Because the record reflects that the ALJ's decision fails to account for or analyze four treatment appointments between Plaintiff and Dr. Sapying from April 2016 through August 2017, the Court cannot say that the ALJ discounted Dr. Sapying's opinion based on good reasons "supported by substantial evidence in the record." *Campbell*, 627 F.3d at 306. As the Seventh Circuit has noted, the ALJ may not fixate on select portions of a treating physician's notes while disregarding more significant evidence. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (finding that the ALJ "cherry-picked" the treating physician's treatment notes).

The case is remanded for further consideration of this issue. Plaintiff has raised other arguments, but further analysis of these issues is not necessary because they would not change the result here and can be addressed more fully on remand. Plaintiff's counsel should raise all such issues with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## CONCLUSION

For the reasons stated above, Plaintiff's request for relief [14] is granted. This matter is remanded to the Commissioner for further proceedings consistent with this order.

Date: May 13, 2026 ENTER:

*Margaret J. Schneider*
United States Magistrate Judge